We'll hear argument in Shakir v. Stanky, is that, am I pronouncing that correctly? Stanky. Thank you. Good morning, your honors. Good morning, Mr. Allen. May it please the court, my name is Pat Allen. I represent the defendant-appellant retired detective Charles Stanky, formerly of the Derby, Connecticut, Police Department, in this appeal. We've asked the court respectfully to reverse the denial of summary judgment based on qualified immunity on two claims, the only claims remaining in this case. The first, both concern events that occurred on February 6, 2009. The first, a warrantless entry after plaintiff's arrest pursuant to a warrant charging him with sexual assault of a minor. The second concerns claims regarding conditions of Mr. Plaintiff's confinement post-arrest at the Derby Police Department. It is our contention that the district court erred in denying qualified immunity as to the former or warrantless entry claim based on the undisputed facts and even accepting the facts, plaintiff's version of disputed facts. It bears noting at the outset that the district court essentially acknowledged in its opinion that the law regarding the exigencies involved in this instance, a minor child perhaps being left bereft of care and supervision was hazy even at the time of the decision, let alone back in February 6, 2009. The situation that detectives were concerned about was the fact that the plaintiff's son was at the time of plaintiff's arrest. But what was hazy about it, given plaintiff's view of the fact? Well, as the district court acknowledged What was hazy about the facts? Quite frankly, Your Honor, Detective Stanky was unclear where plaintiff's minor 8-year-old son was at the time of plaintiff's arrest. He had By the time he got to the door, he knew there was another adult there. Correct. But he did not know who that individual was. And even if he even accepting plaintiff's contention that he did understand that to be plaintiff's brother, plaintiff's brother had just essentially been complicit in what was about an hour standoff during which plaintiff refused to acknowledge the presence of police. And, of course, Detective Stanky was aware that plaintiff knew he was under investigation for allegations of sexual assault. Plaintiff concedes that he knew the police were there to arrest him. Detective Stanky had no idea what was going on inside that house for an hour. All he knew was that plaintiff was in there and plaintiff was not acknowledging his presence. An hour before plaintiff ultimately revealed himself, Detective Stanky, knowing that the boy was supposed to be in the care of plaintiff's mother, contacted plaintiff's mother and she lied to him. She said that the boy was with her. And, quite frankly, that is the only He didn't know that at the time he entered the house, right? He didn't know He had lied. He did not know that. But the only way he could determine that she had lied was to be in her presence, which is why he asked her to come to the scene. Obviously, she wasn't going to do that because she didn't have the boy. Quite frankly, there was, Detective Stanky was in an impossible situation given the tense nature and circumstances outside, as he waits for an hour outside this house. The more you talk about his waiting an hour before going in and then waiting another hour, why couldn't he get a warrant? Well, he had a warrant to arrest plaintiff. He didn't have a warrant to enter the house. Correct, Your Honor, but at that point You see, exigent circumstances are usually things that are happening very fast. Right. Well, just to back up, this whole situation, he attempted to avoid this situation by attempting to arrest Mr. Shakir as pursuant to the warrant at his place of business. Plaintiff was not there. At that point, Detective Stanky is informed by a potential, you know, an objectively unbiased individual that plaintiff is with his son. Again, plaintiff knows he's under investigation. Detective Stanky then becomes concerned about risk to the boy, calls the boy's school and is advised by school officials that by at least one school official that the boy is again with plaintiff. That's disputed, right? Because there's a statement on the other side that the boy was not in school that day. Fair enough, but even accepting plaintiff's version of that fact that the boy was not in school that day, the critical information conveyed by the school official is that plaintiff was with the boy. At that point, Detective Stanky responds to plaintiff's residence in an attempt to serve the warrant. Also, while trying to confirm the whereabouts of the boy, because quite frankly, given the circumstances, it's certainly possible that the boy is in danger or, you know, at a minimum would be left without care and supervision. What are the undisputed facts about the failure to produce the boy for the forensic interview? That had been scheduled? The undisputed facts about that are that plaintiff, that Detective Stanky understood that plaintiff was scheduled, excuse me, that the boy was scheduled to undergo a forensic interview at 11 o'clock, I believe, on January 22nd. The boy does not show, even though there's an agreement between plaintiff and DCF, who's investigating plaintiff throughout these events. Plaintiff calls the forensic interviewer at 11.30, half an hour after he's supposed to, after the boy is supposed to be presented for the forensic interview. At that point, at least to Detective Stanky's knowledge, the boy is supposed to be in the care of Mr. Stanky's, or excuse me, plaintiff's mother. But he turns out to be in the custody of plaintiff, who's bringing the boy to a forensic interview. Obviously, that was against procedure, because he was the potential abuser at issue. So I see that I'm out of time, but I appreciate two minutes on rebuttal. Thank you. We'll give you that, and one of the things I'm going to ask you is which standard of review we apply to the conditions under which Mr. Stanky was held after he was arrested. Good morning, Your Honors. May it please the Court. Noam Beale for Plaintiff Appellee Anwar Shakir Sr. No reasonable police officer would believe that a child was alone in a home when the officer knocked on the door and an adult answered the door. The district court correctly recognized that this case does not come down to a legal question about whether a child left alone constitutes exigent circumstance. If a child would be left alone, one might think, if the adult who answered the door was arrested. I'm talking about the child's uncle. So Mr. Shakir was arrested. The child's uncle came to the door? Correct. So let's just clarify what gave rise to exigent circumstances here under defendant's argument. Mr. Shakir was arrested at the home. He comes out. He surrenders. He comes out to the police car. He's placed in the squad car. That is when the exigent circumstances under their view of the facts arise, because Detective Stanky believes that his 9-year-old son may be alone in the home. Detective Stanky then makes the decision to go into the home without a warrant. He goes up to the door, knocks on the door, and the boy's uncle answers the door. At that point, the exigent circumstances disappear. The uncle let him in? The uncle submitted an affidavit saying he let him in under threat that they would take the door with a battering ram, and so it was not a voluntary he didn't voluntarily allow him into the house. What about the period before he knocks on the door? I mean, there's a lengthy period in which your client doesn't come to the door, and so there's a standoff. Is that irrelevant to a concern about the child, if the child is inside the home? I think it's irrelevant if the concern of the officers was that plaintiff posed a threat to the child, and many of the facts that they raise, all of which are disputed, by the way, are about the threat that plaintiff posed to the child. Once plaintiff is secured in the squad car, any such threat is neutralized. And at that point, as they — Wasn't there a understanding, though, the child was supposed to be with his grandmother? And the officer was told that he was with his grandmother. Now, there's a dispute as to whether the child was supposed to be with his grandmother at all times. There was an agreement. So the Department of Children and Families went to visit the house, determined that there was no danger to the child posed by the plaintiff. Detective Stanky also reported to DCF that he did not believe there was any imminent danger arising from plaintiff. However, plaintiff voluntarily agreed to bring his child in for the forensic interview and to allow him to stay with his paternal grandmother. That's what the agreement says. Now, it does not specify, must he stay with the grandmother at all times. There was a dispute as to how to interpret that. DCF agreed to the father transporting the child for a forensic interview? So what happened with the forensic interview is it was scheduled. It's not correct that he didn't show up. Plaintiff brought the boy to the forensic interview a half an hour late. DCF canceled the interview because he was late, and they also told him when he would need to interview him separately. Plaintiff said, I understand. We'll reschedule it. That was less than two weeks before the arrest occurred, and under plaintiff's version of the facts, that interview was going to be rescheduled. Plaintiff was entirely cooperative with DCF's investigation, and it bears emphasizing that Detective Stanky could have engaged DCF to take custody of the nine-year-old boy if he was concerned about him being left alone. He obtained the arrest warrant on February 4th. He chose not to execute it until two days later, knowing that DCF was involved and had already conducted a preliminary interview of the child, but he did nothing to engage them and to allow them to take custody of the boy when he was arrested. I just want to... According to your client's deposition testimony, he's asked, you know, where is the boy at the time he's in arrest? I guess he's in the patrol car. And he says, I refused. He refuses to answer. I just want to know the significance of that question, because according to the DCF stuff, my son's cool. I mean, that, wouldn't an officer give an answer like that possibly think that the son might be inside the house? He's not answering. He won't say he's with his grandmother. And he's saying, DCF said it's fine. Sure. I think that this Court can credit that an officer would think, based on that answer, that the boy might be in the house. The question is, was he alone in the house and bereft of care? And when they go to the door and an adult answers the door, they can see that the child is not alone in the house. So this case does not turn on whether the legal standard for exigent circumstances is met by that kind of situation. So any exigency that existed disappears because an adult answered the door? Yes. Now, it's possible that more facts could come out at trial that would suggest there were some additional reason, objective reason, for the officer to believe that exigent circumstances still existed despite that. But those facts are not Concern, including concern about who that adult was? Correct. But those facts are not available to us on the summary judgment record. And construing the facts that are available to us in the light most favorable to plaintiff, the District Court was entirely correct to say, on the undisputed facts, qualified immunity is unavailable. And all of the facts that are cited by defendant as bearing on exigent circumstances besides the presence of the uncle are all disputed. So let me just briefly discuss some of those because my adversary mentioned them. The question of receiving the report from the school that Mr. Shakir had picked up his son, as Judge Livingston noted, that is disputed. And, in fact, in separate testimony in Mr. Shakir's criminal trial, Detective Stanky stated that he was told that A.S. was not in school at all. So it's not correct to say he was told that A.S. was with his father. That is contradicted by Detective Stanky's own testimony. And that's at the special appendix on page 183. The timing. Defendant emphasizes this hour-long standoff. But the amount of time is disputed, both in Mr. Shakir's testimony and in testimony from Rashid Shakir, the uncle. Both of those individuals testified that the period of time was closer to 15 and 20 minutes. Now, could a reasonable jury find that even on a 15 to 20-minute timeline, the officer still believed that exigent circumstances existed? Possibly. But what we have here is a disputed issue about the length of time. And the facts must be construed in the light most favorable to plaintiff. Again, after a trial, a jury may determine that they should credit Officer Stanky's version of the events. But that's not where we are in this procedural posture. As to the forensic interview, as I just mentioned, Mr. Shakir had brought his son there and was a half an hour late. And that's the reason that the forensic interview was delayed. Again, with respect to all the facts regarding the threat posed by Mr. Shakir, which defendant emphasizes, those are irrelevant once Mr. Shakir is secured in the squad car. And in any event, many of those are also disputed. So I have a question about the standard that we apply, 14th Amendment or 4th Amendment analysis, with respect to the allegations, conditions of confinement. To address that claim, as this Court has held and the Supreme Court held in Kingsley v. Hendrickson, even under the 14th Amendment standard, a jury, a pretrial detainee can prevail on a conditions of confinement claim if objective evidence shows that the challenged government action was not legitimately related to a government penological purpose or was excessive in relation to that purpose. That's under the 14th Amendment standard. Okay? Here there's a dispute about which standard applies, the 14th Amendment or the less stringent 4th Amendment standard. And the reason there's a dispute as to that is we don't know on the summary judgment record when Mr. Shakir had a bond hearing. Now, on either standard, Mr. Shakir has alleged that Defendant Stanky brought him to the station house, taunted him on the way to the station house, put him in a freezing cold cell, made him strip down to his underwear, and left him in there, and the air conditioning was turned up. Now, admittedly, he does not ---- By the way, according to your client, about the high bail, I mean, isn't that some indication that arraignment, that a bond hearing might have already been held? I don't think we know at this point. It's just not clear from the record. But even if the 14th Amendment ---- Just help me understand the record. But didn't your client testify that he was taunted about the high bail? Maybe the taunts were about the high bail that's going to be set or the high bail that's already been set. But there was some ---- there was some conversation about that. I think that's right. And I see my time has expired, but I'll try to answer the question if I may. I don't think it's entirely clear, and I apologize, I don't know precisely what Plaintiff said in his testimony about that. I think the critical issue for the conditions of confinement claim can be found at page 8 of Defendant's reply brief, which is where he recounts Plaintiff's version of the facts and then says that Detective Stankey denies having seen Plaintiff at the police department at all. This issue, too, comes down to a factual dispute about what happened that cannot be resolved by this Court at the summary judgment stage. It has to be resolved at trial. The Court should affirm. Thank you, Mr. Beall. Mr. Allen, you've reserved two minutes. Thank you, Your Honor. Yes, if I could just address counsel's contention that the time frame or standoff was, according to Plaintiff, 15 to 20 minutes. His entire deposit ---- he placed his entire deposition transcript into the record in the special appendix, and he testified specifically that he thought that he had waited 15 to 20 minutes before revealing himself. But then when he was confronted with Detective Stankey's sworn affirmation that it was an hour, he conceded that he couldn't remember how long it took. He then ---- and, again, this is Plaintiff's own version of the facts. In his pro se submission to this Court, he ---- his own wording is it took about 30 to 40 minutes for him to reveal himself. And one further point, although there's no dispute that the individual that Plaintiff claims was his uncle eventually came to the door at the special appendix 162-163, his uncle testified that he then waited 15 to 20 minutes to reveal himself after Plaintiff had already surrendered. So at that point, during ---- throughout that time, there's no way for Detective Stankey to know the condition of the boy, the well-being of the boy. And once the uncle opens the door, he mentions nothing about who he is or anything about the boy, which is why Detective ---- He doesn't say he's the uncle. He does not say anything. And that's undisputed. Again, at the special appendix, the uncle testified at the criminal proceeding. Lastly, I see that I'm about out of time. I'd just suggest that with respect to the conditions of confinement claim, I'd urge the Court to look closely at the undisputed facts, that that claim comes down essentially to Plaintiff's contention that the air conditioner was turned up after Detective Stankey was in his presence. But there's no dispute that Detective Stankey didn't turn up the air conditioner, didn't know that the air conditioner had been turned up, didn't know how to turn up the air conditioner. And Plaintiff, lastly, was, although there has been suggestion that he was left in his underwear in the cell, again, he testified at his deposition that, in fact, he was made to strip but then given at least his pants back on. So we'd submit that even construed as a Fourth Amendment claim, which we think it should not be, and even, you know, notwithstanding the fact that Detective Stankey disputes all of these allegations, Plaintiff's version of the facts relevant to this claim do not amount to a violation of his rights under Fourth or Fourteenth Amendment. Thank you. Thank you both.